STATE OF MINNESOTA *ex rel.* EDWARD F. PARKER *vs.* ANSEL SMITH.

October 7, 1875.

**Municipal Corporations—Meeting of Council—Election by Council.**—Under the charter of the city of Duluth its common council was required, at its first meeting after the annual city election, held on the first Tuesday of April, 1874, or at an adjournment thereof, to elect an assessor to succeed the relator, whose term of office expired on the 15th of that month. On April 14 the council met and organized, but adjourned *sine die* without having made an election. On April 29 said council convened, pursuant to an irregular adjournment of less than a quorum from a previous regular meeting, and elected respondent as such assessor for two years, who thereupon duly qualified and entered upon the discharge of the duties of such office, and still holds the same. *Held*, 1. That defendant was legally elected, and is entitled to hold the office.

**Same—Election by Council at Later Date than that Directed by Charter.**— 2. That the omission to elect at its first meeting did not relieve the council of its duty, nor deprive it of the power to make an election at the earliest opportunity.

**Same — Charter Provisions as to Time and Place of Meeting of Council.—3.** That the charter provision requiring the council "to meet at such time and place as they, by resolution, may direct," is mandatory and directory, but not prohibitory.

**Same — Meeting of Council Legal if all Present.—4.** That a meeting held at any other time than that fixed for a regular meeting under a resolution of the council, or for a special meeting under the call of the mayor, is a legal meeting if all its members actually attend and participate in its proceedings, and it is otherwise regular.

**Same—Presumption of Legality of Meeting.—5.** It appearing that a meeting of the council was held, at which business was transacted which it only had a right to do at a legal meeting, it will be presumed, if necessary, and nothing to the contrary being shown, that all its members were present and acted.

Action in the nature of *quo warranto*, the relator being also joined as plaintiff, to try the title to the office of assessor of the city of Duluth. The relator was elected April 15, 1873, the defendant April 29, 1874; but, on behalf of the relator, it was claimed that the latter election was invalid, and that the relator was entitled to continue in office until a valid election of a successor to him. Trial was had in the district court for St. Louis county, before

*McKelvey*, J., upon whose findings judgment was entered for the defendant, from which the plaintiffs appeal.

*George P. Wilson*, Attorney General, for appellants.

*Robert G. Terry*, for respondent.

CORNELL, J. By the charter of the city of Duluth (Sp. Laws 1870, p. 1,) the common council of said city is composed of the aldermen elected from the several wards of said city, one-half of whom are elected annually, with a term of office of two years and until their successors are elected and qualified. Ch. 2, § 2 ; ch. 4, § 1. The annual election for elective officers is fixed by the charter for the first Tuesday of April in each and every year. Ch. 2, § 1. In case any officer neglects or refuses, for ten days after notice of his election or appointment, to enter upon the discharge of the duties of his office, he shall be deemed to have vacated his office. Ch. 2, § 7. Whenever a vacancy occurs in any office it shall be filled by the common council, and the person so appointed shall hold his office, and discharge the duties thereof, for the unexpired term. Ch. 2, § 4.

Section 23, ch. 3, of the charter declares that " the common council shall, at their first meeting after the annual election, or an adjournment thereof, elect a city assessor, who shall hold his office for two years and until his successor is elected and qualified ; " that he " shall perform all the duties required of assessors of property for the purposes of taxation for state, county, city, or other purposes, within the city of Duluth ; " that he " shall hold his office for two years from the time of his election and until his successor is elected and qualified, and shall file a bond with the county auditor of St. Louis county for the sum of five thousand dollars, and shall take an oath of office, in the manner and within the time prescribed for assessors under the general laws of the state. In case of his failure to qualify according to law, or in case of his death, resignation, removal, or other cause disqualifying him from performing the duties of his office, his office shall be declared vacant, and another

assessor elected by the council to act in his place." Section 1, ch. 3, also provides that " every person elected or appointed to any office shall, before he enters upon the duties of his office, take and subscribe an oath of office, and file the same, duly certified by the officer taking the same, with the clerk of the city ; " and also provides that the assessor, among other officers there named, shall execute to the city a bond, with sureties, in such penal sum and with such conditions as the common council may deem proper ; and the council may, from time to time, require a new or additional bond, and remove from office such officer refusing or neglecting to give the same.

Section 1, ch. 4, enacts that " the common council shall meet at such time and place as they, by resolution, may direct. A majority of the aldermen shall constitute a quorum ;" and § 2, ch. 4, declares that " the common council shall hold stated meetings, and the mayor may call special meetings by notice to each of the members,  *   *   *   and shall determine the rules of its own proceedings, and have power to compel the attendance of absent members." By a resolution of the council, of July 8, 1873, their regular and stated meetings were directed and fixed to be holden on the first and third Tuesdays of each and every month, and no subsequent resolution was ever adopted making any change in this regard.

The annual charter election for 1874 was held on the first Tuesday of April, which was the same day fixed for the holding of one of the regular meetings of said council, as prescribed by such resolution, but none was held. On the 14th, the second Tuesday of said month, a meeting was held, at which the new aldermen elected took their seats, and a reorganization was had by the election of a permanent president and vice-president, and business pertaining to the city was transacted, whereupon, without taking any action upon the question of electing an assessor to succeed the relator, whose term of office expired on the next day, (as

appears from an averment in the complaint, not denied,) the council adjourned without naming any day. The next meeting was on the 21st, or third Tuesday of April, the regular time of meeting as fixed by said resolution. At this meeting the council balloted for an assessor, but, being unable to elect one, adjourned till April 25, at 7 1-2 o'clock. P. M., when it again convened, but, no quorum being present, adjourned again till April 29, at 7 1-2 o'clock P. M., at the same place, at which latter time, as the court finds, " the said common council did again meet at their council room, and did then and there vote and ballot for an assessor of said city, and the defendant did then and there receive a majority of the votes of said council for said office of assessor, and was thereupon declared by said council elected to said office, and said defendant did thereupon qualify and enter upon the duties of said office, and ever since has been, and now is, acting as assessor of said city." The court further finds as a fact that, except as hereinbefore stated, there was no meeting of the common council held after said annual election, and prior to the time when said assessor was so as aforesaid elected, and that neither of said meetings was a special meeting called by the mayor of the city or the president of the council.

Upon these facts it is claimed by the plaintiff and the relator that the election of the said defendant was void, and that the relator is entitled to hold over, because his successor has not yet been duly elected and qualified. This conclusion is rested upon these propositions : That the common council could only elect an assessor at its first legal meeting after the annual election, or an adjournment thereof, and that the adjournment of the first meeting *sine die,* without an election, put it out of the power of the council to elect at any subsequent time ; and, second, if the meeting of April 14 was invalid and a nullity, according to the opinion of the district court, then there was no legal organization of the council, and the subsequent proceedings.

and meetings were nullities; and that the meeting at which such election was held was a nullity for the additional reason that, being an adjournment from a prior meeting, at which there was no quorum, it was irregular and void, because the presence of a quorum was necessary to enable the council to act upon the question of an adjournment.

The provision of the charter, that the "council shall meet at such time and place as they, by resolution, may direct," is mandatory and directory, but not prohibitory. This requirement contains no negative upon its meeting at other times than those fixed by resolution. Inasmuch as it is not only the duty, but the right, of each member to be present and participate in the deliberations and proceedings of the council, a legal notice to all of every meeting, whether regular or special, is requisite, in order to enable a quorum of the council to act, and to give validity to its transactions. This object is accomplished, in the case of its regular meetings, by a resolution fixing the time and place thereof, of which all must take notice; whereas, as to special meetings, called by the mayor, personal notice must be served in the manner provided by the charter; and, as these two are the only modes provided by the charter for convening the council, a meeting assembled under any other authority, or in any other manner, would be so far unauthorized and illegal that no valid action could be taken by a mere quorum, neither would any alderman be under any obligation to take any notice of it, nor could his attendance be enforced.

In case, however, all the members concur in meeting, organizing and acting as a body in reference to matters clearly within the scope of their corporate powers, there is nothing in the charter expressly or impliedly prohibiting them from so doing, or invalidating their action. The powers conferred, and the duties imposed, upon the common council were obviously with the view of their being exercised whenever occasion required, and no limitation or

restriction upon its right voluntarily to meet at any time for such purpose can be inferred from the fact that it is made obligatory upon it to provide by resolution for a regular time and place of meeting, or the fact that it may be convened at any time upon call of the mayor. Hence, in our judgment, the meeting held on April 14, 1874, with the presumed assent and participation of all its members, was a valid meeting.

Assuming that this was the proper time for the election of an assessor, the failure of the council then to act upon the matter, and its adjournment *sine die,* did not relieve it from the duty, which the law imposed upon it, of making an election. So far as relates to the time when such election should be made, the statute is simply directory. Having neglected its duty at the proper time, from whatever cause, the obligation still rested upon it to elect at the earliest opportunity. 2 Dillon Mun. Corp. § 675; *People* v. *Fairbury,* 51 Ill. 149.

Assuming, as is claimed by appellants, that the adjournment from the 25th to the 29th of April was irregular because of the want of a quorum, it does not appear, either from the findings of the court below or otherwise, but that the adjourned meeting was fully attended by all the members of the council, and that they all participated in its proceedings and in the election which was then had. In the absence of such finding the presumption is that they all did so attend, and acquiesced in the irregular adjournment. " Illegality will not be presumed, but the contrary. The maxim of law in such cases is, *omnia rite acta presumuntur*." *Citizens' M. F. Ins. Co.* v. *Sortwell,* 8 Allen, 219, 223; *Sargent* v. *Webster,* 13 Met. 497, 504.

It follows from the foregoing views that the defendant was properly elected an assessor, and that the judgment of the court below in his favor must be affirmed.